

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE FEB 0 6 2014

CHIEF JUSTICE



This opinion was filed for record
at 8:00 am on Feb 6, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 88083-2 |
| Respondent, | ) | |
| v. | ) | En Banc |
| WILLIAM JOHN KIPP, JR., | ) | |
| Petitioner. | ) | Filed _____ FEB 0 6 2014 |

C. JOHNSON, J.—The central issue in this case is whether the trial court erred in admitting into evidence a secretly recorded conversation between William Kipp and his brother-in-law in violation of Washington's privacy act, chapter 9.73 RCW. Kipp was convicted of two counts of rape of a child and one count of child molestation in the second degree. Part of the evidence presented at trial was a recording of a conversation made without Kipp's knowledge or consent. Before trial, Kipp moved to suppress the recording, relying on the privacy act. The trial court ruled that the recording was not a private conversation and, therefore, not subject to suppression. A jury found Kipp guilty and he appealed. In a split decision, the Court of Appeals affirmed, holding that substantial evidence supported the trial court's ruling. In reaching its conclusion, the Court of Appeals

rejected this court's precedent under *State v. Clark*, 129 Wn.2d 211, 916 P.2d 384 (1996), which holds that when facts are undisputed, the question of whether a particular communication is private is a matter of law reviewed de novo. The Court of Appeals utilized an abuse of discretion standard on review. Kipp petitioned this court for discretionary review, which we granted. *State v. Kipp*, 171 Wn. App. 14, 286 P.3d 68 (2012), *review granted*, 176 Wn.2d 1024, 301 P.3d 1047 (2013). We hold that for purposes of the privacy act, when facts are undisputed, the question of whether a particular communication is private is a matter of law reviewed de novo. In this case, Kipp's conversation with his brother-in-law was private and therefore should have been suppressed. We reverse and remand.

FACTS AND PROCEDURAL HISTORY

William Kipp was accused of sexually assaulting two of his nieces. He was confronted by their father, Kipp's brother-in-law, who secretly recorded a conversation onto a cassette tape. This conversation was reported to police. The State charged Kipp, for the acts against one of his nieces, with two counts of second degree rape of a child and one count of second degree child molestation.

Before trial, Kipp moved to suppress the recorded conversation under the privacy act, chapter 9.73 RCW. The trial court declined to conduct an evidentiary

hearing and instead accepted the facts put forth by the parties.[1] The trial court also listened to the recording, which was a little over 10 minutes in duration, and accepted the following undisputed facts: (1) Kipp did not know he was being recorded, (2) the taped conversation is about 10 minutes long, (3) the conversation took place in the upstairs kitchen of a private home, (4) the conversation was between Kipp and his brother-in-law, (5) the topic of conversation was the accusation that Kipp molested Joseph Tan's daughters, and (6) Kipp suggested toward the end of the conversation that they talk about it further at a later time. Based on these facts, the trial court concluded that the conversation between Kipp and his brother-in-law was not a private conversation and therefore not subject to suppression under the privacy act. The recorded conversation was admitted into evidence at trial, and the court reporter transcribed the recording to the best of her abilities. The court revisited the suppression motion after the State substituted the original recording during trial. The court reaffirmed its earlier ruling. A jury found Kipp guilty on all counts.

Kipp appealed. The Court of Appeals affirmed in a split decision, holding that sufficient evidence supported the trial court's decision that the conversation

---

[1] Although Kipp assigned error to the trial court's failure to conduct an evidentiary hearing in its briefing to the Court of Appeals, this issue is not before us on review. *See* Pet. for Review.

was not private. We granted Kipp's petition for discretionary review. The American Civil Liberties Union of Washington filed a brief in support of Kipp's argument.

ANALYSIS

The privacy act prohibits recording of any "[p]rivate conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation." RCW 9.73.030(1)(b). Evidence obtained in violation of the act is inadmissible for any purpose at trial. RCW 9.73.050. It is undisputed that the conversation was recorded without Kipp's permission. The only issue, then, is whether the conversation between Kipp and his brother-in-law was "private."

Generally, the privacy act is implicated when one party records a conversation without the other party's consent. Washington State's privacy act is considered one of the most restrictive in the nation. *State v. Townsend*, 147 Wn.2d 666, 672, 57 P.3d 255 (2002).

"Our state has a long history of statutory protection of private communications and conversations." *Clark*, 129 Wn.2d at 222.

> Since 1909, the privacy act has protected sealed messages, letters, and telegrams from being opened or read by someone other than the intended recipient. RCW 9.73.010-.020. In 1967, the legislature

4

amended the act in order to keep pace with the changing nature of electronic communications and in recognition of the fact that there was no law that prevented eavesdropping.

*State v. Christensen*, 153 Wn.2d 186, 198, 102 P.3d 789 (2004). "In 1977, the [l]egislature permitted electronic recording of conversations with one party's consent where law enforcement obtained an order from a judge or magistrate finding probable cause to believe that the nonconsenting party committed, was engaged in, or is about to commit a felony." *Clark*, 129 Wn.2d at 222-23 (citing RCW 9.73.090(2)). Again, in 1989, the legislature broadened the ability of law enforcement officers to record private conversations and communications concerning drug felonies. *See* RCW 9.73.090(5); *Clark*, 129 Wn.2d at 223.

The federal government and 49 states have enacted privacy or eavesdropping statutes. Washington is 1 of only 11 states that require that *all* parties to a private communication consent to its recording and disclosure. This "all-party consent" rule adds an additional layer of protection to the private conversations of Washington's residents. Since 1967, the legislature has twice made amendments to the act without amending the "all-party consent" provision. Instead, the Washington statute continues to tip the balance in favor of individual privacy at the expense of law enforcement's ability to obtain information in criminal proceedings. *Christensen*, 153 Wn.2d at 198-99.

5

Washington's privacy act and "all-party consent" rule provide more protection than both the state and federal constitutions. Under Washington Constitution article I, section 7, when one participant in a conversation has consented to the recording of the conversation, the state constitution is not violated.[2] *State v. Corliss*, 123 Wn.2d 656, 663-64, 870 P.2d 317 (1994) (concluding that petitioner's state constitutional privacy rights were not violated when an informant consented to allow police officers to overhear his conversations with petitioner). Similarly, recording a conversation with one party's consent does not violate the Fourth Amendment to the United States Constitution. *United States v. Caceres*, 440 U.S. 741, 750, 99 S. Ct. 1465, 59 L. Ed. 2d 733 (1979).

In this case, we must decide whether this state's privacy act was violated when Kipp's brother-in-law recorded their conversation in the kitchen of a private residence without Kipp's permission.

1. STANDARD OF REVIEW

We must first determine what standard of review applies to a trial court's ruling on a motion to suppress evidence under the privacy act. The protections of the privacy act apply to private communications or conversations. *Clark*, 129 Wn.2d at 224 (citing *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178,

---

[2] Article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

189, 829 P.2d 1061 (1992)). This court has repeatedly observed that "[w]hether a particular conversation is private is a question of fact, but where the facts are undisputed and reasonable minds could not differ, the issue may be determined as a matter of law." *Clark*, 129 Wn.2d at 225 (citing *Kadoranian*, 119 Wn.2d at 190); *see Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 458, 139 P.3d 1078 (2006); *Christensen*, 153 Wn.2d at 192; *Townsend*, 147 Wn.2d at 673. Questions of law are reviewed de novo. *State v. Jim*, 173 Wn.2d 672, 678, 273 P.3d 434 (2012).

While acknowledging this "oft-cited" precedent, the Court of Appeals in this case concluded that "this is the wrong standard" and applied a substantial evidence standard. *Kipp*, 171 Wn. App. at 23. In doing so, it suggested that we erred in *Clark* by importing a civil standard of review for summary judgment from *Kadoranian* into a criminal case. The Court of Appeals concluded that "the *Kadoranian* standard as applied to criminal cases is an 'anomaly in Washington law' that should be discarded." *Kipp*, 171 Wn. App. at 25.[3]

---

[3] The concurrence and Court of Appeals suggest that there is no procedure analogous to summary judgment in criminal cases. Concurrence at 4; *Kipp*, 171 Wn. App. at 24-25. However, this court in *State v. Knapstad*, 107 Wn.2d 346, 350, 352-53, 729 P.2d 48 (1986), rejected the argument that the Superior Court Criminal Rules do not provide for a summary judgment type procedure and held that "when the material facts of a prosecution are not in dispute, the case is in the posture of an isolated and determinative issue of law as to whether the facts establish a prima facie case of guilt." Under *Knapstad*, there is a summary-judgment-like standard of review in criminal cases.

But we have said that before an established rule may be abandoned it must be shown to be both incorrect and harmful. *State v. Abdulle*, 174 Wn.2d 411, 415, 275 P.3d 1113 (2012).[4] First, the State fails to show that the rule is incorrect. The general rule is that "where competing documentary evidence must be weighed and issues of credibility resolved, the substantial evidence standard is appropriate." *Dolan v. King County*, 172 Wn.2d 299, 310, 258 P.3d 20 (2011) (citing *In re Marriage of Rideout*, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003)). In contrast,

> "where . . . the trial court has not seen nor heard testimony requiring it to assess the credibility or competency of witnesses, and to weigh the evidence, nor reconcile conflicting evidence, then on appeal a court of review stands in the same position as the trial court in looking at the facts of the case and should review the record de novo."

*Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994) (quoting *Smith v. Skagit County*, 75 Wn.2d 715, 718, 453 P.2d 832 (1969)); *see also State v. Rowe*, 93 Wn.2d 277, 280, 609 P.2d 1348 (1980) (where the trial court's findings stem exclusively from the stipulation and attached standards rather than from the testimony of witnesses, this court is not bound by

---

[4] Here, the Court of Appeals failed to engage in this analysis. This is perhaps because neither party argued in its briefing below that the established standard of review should be abandoned. *See* Br. of Resp't at 21 n.5 (noting that "Washington Courts have even explained that when the facts are not meaningfully in dispute, the issue of whether a conversation is private may even be decided as a question of law" (citing *Clark*, 129 Wn.2d at 225)).

the findings). The rule that undisputed evidence may be decided as a matter of law and reviewed de novo is entirely consistent with this general rule.

Moreover, the State does not present any argument that this rule is harmful. Although de novo review of a ruling on a suppression motion is arguably harmful because it wastes judicial resources, this argument is not persuasive because *Clark* limited de novo review to a select number of cases where the facts are undisputed. *Clark*, 129 Wn.2d at 225. Thus, contrary to what the State and Court of Appeals contend, this case is unlike *State v. Hill*, 123 Wn.2d 641, 645, 870 P.2d 313 (1994). There, we rejected a line of cases holding that the fundamental constitutional rights involved in a suppression motion require the appellate court to undertake an independent evaluation of the evidence in *all* cases. Because *Clark* limits review to select cases, it is consistent with *Hill*. A departure from the settled standard of review is therefore unwarranted and the Court of Appeals' suggestion that all suppression motions should be reviewed for substantial evidence is rejected.

In this case, the trial court accepted the facts as represented by Kipp and his counsel and therefore made no credibility or other determinations for which its firsthand observation of the proceedings better positioned it to make. Although the trial court listened to the recording, there is no indication that the court did so in

9

order to resolve factual disputes. Because the facts are undisputed, we review de novo whether the conversation was private.[5]

In addition, since whether the "facts" are encompassed by the statutory protections presents a question regarding statutory interpretation, de novo review is the appropriate standard of review. This is true whether as here, the facts are undisputed, or whether review of the facts as found by the trial court are the focus. The determination of privacy is more akin to reviewing a conclusion of law than a fact.

## 2. "PRIVATE"

Since the act is implicated by the unconsented recording, the statutory analysis favors privacy unless it is shown differently. While the term "private" is not defined in the act, it is to be given its ordinary and usual meaning: "'belonging to oneself . . . SECRET . . . intended only for the persons involved <a ~ conversation> . . . holding a confidential relationship to something . . . a secret message : a private communication . . . SECRETLY : not open or in public.'"

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1804-05 (1969), *quoted in*

---

[5] This holding is consistent with similar federal cases. For example, in *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996), the Supreme Court held that while a reviewing court should review findings of historical fact for clear error and give weight to the inferences the trial judge drew from those facts, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." The Court reasoned that not having de novo review would lead to inconsistent results and that independent review is necessary if appellate courts are to maintain control of, and to clarify, legal principles.

*Clark*, 129 Wn.2d at 224-25. A communication is private (1) when parties manifest a subjective intention that it be private and (2) where that expectation is reasonable. *Townsend,* 147 Wn.2d at 673.

Factors bearing on the reasonableness of the privacy expectation include the duration and subject matter of the communication, the location of the communication and the presence or potential presence of third parties, and the role of the nonconsenting party and his or her relationship to the consenting party. Ultimately, the intent or reasonable expectations of the participants as manifested by the facts and circumstances of each case controls as to whether a conversation is private. *Clark*, 129 Wn.2d at 224-27. The reasonable expectation standard calls for a case-by-case consideration of all the facts. *State v. Faford*, 128 Wn.2d 476, 484, 910 P.2d 447 (1996).

Here, Kipp manifested a subjective intention that the conversation be private. We have found subjective intent that a conversation be private even though the party does not explicitly state such an intention. *See, e.g., Christensen*, 153 Wn.2d at 193 (concluding that the defendant subjectively intended for the phone conversation to be private by asking to speak to his girl friend and that his girl friend manifested such an intent by taking the phone into her bedroom and closing the door). Here, as Kipp was going into the kitchen, another family member left, thereby evidencing his subjective intent that the conversation be between only him

and his brother-in-law. The State argues that Kipp's statement toward the end of the conversation shows that he did not intend that the conversation be private. Specifically, the State notes that Kipp said, "[L]ike I say, when we get a chance, just you and I, we will go somewhere and we'll talk, try to . . . understand everything." 2 Verbatim Report of Proceedings (July 28, 2009) at 213. According to the State, this demonstrates that Kipp did not believe that the conversation was private. However, this reasoning is flawed because the statement occurred at the end of the conversation and demonstrates only that he desired to continue discussing the matter privately in the future. Thus, we conclude he subjectively intended that the conversation be private.

Applying the *Clark* factors, we conclude Kipp's expectation of privacy was reasonable. When considering the first factor, duration and subject matter of the conversation, the parties agree that the 10-minute duration suggests the conversation was private. With regard to the subject matter of the conversation, we have held that "inconsequential, nonincriminating" conversations generally lack the expectation of privacy necessary to be protected under the act. *Faford*, 128 Wn.2d at 484.

In contrast, an incriminating statement of a serious subject matter is the type of conversation protected under the act. In *Faford*, we held that defendants' neighbor violated the privacy act by eavesdropping on cordless telephone

conversations and that any evidence gained through this violation was inadmissible. Although the recorded conversations concerned illegal activity—a marijuana growing operation in the defendants' home—we held that the defendants had a reasonable expectation of privacy and that both the recordings and any information gathered from the illegal communications should have been suppressed. *Faford*, 128 Wn.2d at 488-89.[6]

Conversely in *Clark*, we held that 16 conversations where the defendants approached a stranger for brief, routine conversations on the street about drugs were not private. We limited our holding to those 16 conversations, noting that there are many illegal transactions that may involve private conversations. *Clark*, 129 Wn.2d at 231.

Here, the State contends that a person who confesses to child molestation should expect this information to be reported to the authorities, and therefore it is unreasonable to expect the conversation to remain private. While this may be true, it has little relevance to whether the recording itself is proper. As Kipp points out, accepting the State's argument would mean that a confession of child molestation

---

[6] While the fruit of the poisonous tree doctrine generally does not apply to private searches, Washington's privacy act is applied broadly as to require exclusion of any "evidence exclusively and directly flowing from a privacy act violation." *Faford*, 128 Wn.2d at 489. Any other result would render any privacy protection illusory and meaningless. *Faford*, 128 Wn.2d at 489.

or any other crime is never subject to a reasonable expectation of privacy. This is in direct opposition to what we said in *Clark* and *Faford*. Instead, the subject matter of the conversation in this case was not one that is normally intended to be public, demonstrating Kipp's reasonable expectation of privacy.

The second factor—location of the conversation and presence or potential presence of a third party—also weighs in favor of concluding that the conversation was private because it took place while Kipp and his brother-in-law were alone in a private residence. A private home is normally afforded maximum privacy protection. *State v. Hastings*, 119 Wn.2d 229, 233, 830 P.2d 658 (1992). The undisputed facts establish that the conversation took place in the kitchen of a private residence. Although the State contends that a kitchen is a common area subject to a lesser expectation of privacy, the record shows that the men were alone and that Kipp's brother-in-law asked his son to leave the room so that they could talk. It is difficult to separate rooms in a house and label some "private" and some not. Both the trial court and Court of Appeals attempt to generalize that all kitchens are common areas with increased potential for the presence of third parties. But our determination as to whether a conversation is private requires a case-by-case analysis. Whether other persons were present is more relevant. Here, based on the location of the conversation and the absence of a third party, it was reasonable for Kipp to believe the conversation was private.

14

Finally, Kipp's role as the nonconsenting party and his relationship to his brother-in-law further demonstrate that Kipp had a reasonable expectation of privacy. Generally, two people in a conversation hold a reasonable belief that one of them is not recording the conversation. But, in evaluating this factor, we have found that the nonconsenting parties' willingness to impart the information to a stranger evidences that the communication is not private. *Clark*, 129 Wn.2d at 226-27 (citing *Kadoranian*, 119 Wn.2d at 190). We have also repeatedly held that conversations with police officers are not protected under the act. *See Lewis*, 157 Wn.2d at 460. The parties in this case are not strangers or public officials; they are family. And contrary to what the State contends, the nature of the relationship between the parties is not altered by the subject matter of the conversation. Focusing on Kipp's role as "the accused" eviscerates the privacy act's protections for any person accused of a crime. Under this rationale, the actual relationship between the parties would be irrelevant. If we accepted the State's argument, this factor "would always weigh against any accused person who makes an incriminating statement, yet incriminating statements are the very type of communications usually triggering the privacy act's protections." *Kipp*, 171 Wn. App. at 41-42 (Van Deren, J., dissenting).

We conclude Kipp had both a subjective and reasonable expectation of privacy as he was speaking in private with his brother-in-law about a very sensitive

matter.[7] Because the recording violated the privacy act, the trial court should have suppressed it.[8]

---

[7] While the recorded conversation violated the privacy act, the State could have solicited testimony from Kipp's brother-in-law regarding Kipp's alleged confession. Kipp's statements would not have been hearsay. ER 801(d)(2)(i) (A statement is not hearsay if the statement is offered against a party and is the party's own statement.).

[8] Generally, the admission of evidence in violation of the privacy act is subject to a harmless error analysis. *Christensen*, 153 Wn.2d at 200 ("Failure to suppress evidence obtained in violation of the act is prejudicial unless, within reasonable probability, the erroneous admission of the evidence did not materially affect the outcome of the trial." (citing *State v. Porter*, 98 Wn. App. 631, 638, 990 P.2d 460 (1999))). Here, the State did not argue that the error was harmless so we need not engage in this analysis.

CONCLUSION

We reverse the conviction and remand for further proceedings.

WE CONCUR:

No. 88083-2

FAIRHURST, J. (concurring)—I agree with the majority's result that the recorded telephone conversation between William John Kipp Jr. and his brother-in-law was private under Washington's privacy act, chapter 9.73 RCW, and that the conversation should have been suppressed. Majority at 2. I disagree with the majority's holding that de novo review is appropriate when determining whether a particular communication is private in a motion to suppress. *Id.* at 2, 9-10. Substantial evidence is the appropriate standard as the Court of Appeals recognized in this case, *State v. Kipp*, 171 Wn. App. 14, 24-25, 286 P.3d 68 (2012), *review granted*, 176 Wn.2d 1024, 301 P.3d 1047 (2013), and we recognized in *State v. Hill*, 123 Wn.2d 641, 645-47, 870 P.2d 313 (1994), and most recently in *State v. Schultz*, 170 Wn.2d 746, 753, 248 P.3d 484 (2011).

The majority, relying on *State v. Clark*, 129 Wn.2d 211, 225, 916 P.2d 384 (1996), reaffirms de novo review. Majority at 7 (When facts are undisputed, the question of whether a particular communication is private is a matter of law

1

reviewed de novo. (citing *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 190, 829 P.2d 1061 (1992))). Although this language has also been cited in subsequent cases, *see* majority at 7, the standard of review was not at issue in those cases.

The Court of Appeals correctly recognized that *Clark* should not have relied on *Kadoranian* because it was a civil case involving a summary judgment motion. Kadoranian filed a civil class action lawsuit under the privacy act claiming the police department inadvertently intercepted one of her private conversations. 119 Wn.2d at 181-83. Applying the civil summary judgment standard of review, that is the issue could be determined as a matter of law because the facts were undisputed and "reasonable minds could not differ on the subject," *id.* at 190, we affirmed the trial court's summary judgment that it was not a private conversation, *id.* at 190-92.

Further, in *Hill*, decided two years before *Clark*, we specifically rejected and overruled de novo review of criminal motions to suppress evidence. In *Hill*, we considered a line of cases that imposed a duty on reviewing courts "to undertake an independent evaluation" when reviewing factual findings in a motion to suppress. 123 Wn.2d at 645. In *Hill*, we overruled the de novo standard of review in criminal cases as "an anomaly in Washington law" after determining that there was

2

no reason to make a distinction between constitutional claims such as those involved in a suppression hearing. *Id.* We recognized that "[t]he trier of fact is in a better position to assess the credibility of witnesses, take evidence, and observe the demeanor of those testifying. This remains true regardless of the nature of the rights involved." *Id.* at 646-47 (citations omitted). We said a reviewing court should not conduct an independent evaluation of the facts in a motion to suppress, but rather should review only those facts to which error has been assigned. *Id.* at 647. "This strikes the proper balance between protecting the rights of the defendant, constitutional or otherwise, and according deference to the factual determinations of the actual trier of fact." *Id.*

*Clark* does not mention or overrule *Hill*. There is no discussion in *Clark* of *Hill* being incorrect or harmful. As recently as 2011, we stated in criminal cases that the reviewing court determines whether findings of fact on a motion to suppress are supported by substantial evidence and whether those findings support the trial court's conclusions of law. *See Schultz*, 170 Wn.2d at 753; *see also State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009). "'Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding.'" *Schultz*, 170 Wn.2d at 753 (quoting *Hill*, 123 Wn.2d at 644).

3

The substantial evidence standard is the appropriate standard of review when reviewing a motion to suppress. The trier of fact is in a better position to assess. *Hill*, 123 Wn.2d at 646. Here, the trial judge listened to the recording and then heard argument. 1 Verbatim Report of Proceedings (July 21, 2009), at 58, 62-64. In her ruling, the trial judge discussed her impressions of the tape, accepted defense counsel's description of the events as would have been testified to by the defendant, and described language she heard on the tape that was not covered by the factors but which she thought reflected the expectation and intent of the parties. *Id.*

The Court of Appeals correctly recognized that summary judgment in civil cases does not have an equivalent procedure in criminal law. The majority cites *State v. Knapstad*, 107 Wn.2d 356, 350, 352-53, 729 P.2d 48 (1986), as proof of a "summary-judgment-like standard of review in criminal cases." Majority at 7 n.3. While it uses language that sounds like that applied in a civil summary judgment motion, a *Knapstad* motion is a specific pretrial criminal motion brought by the defendant alleging insufficient evidence. If a *Knapstad* motion is denied, it cannot be appealed. Also, only the State can appeal when a *Knapstad* motion is granted, and the State may refile the charges because a *Knapstad* dismissal is without prejudice. *See State v. Freigang*, 115 Wn. App. 496, 502, 61 P.3d 343 (2002).

4

The substantial evidence standard of review does not diminish the reviewing court's ability to address errors. When considering a motion to suppress, the reviewing court will ferret out erroneous conclusions of law that are unsupported by the findings. *State v. Lohr*, 164 Wn. App. 414, 423-24, 263 P.3d 1287 (2011) (court erred in concluding defendant's purse was a household item and therefore subject to search); *State v. Jesson*, 142 Wn. App. 852, 857-59, 177 P.3d 139 (2008) (court erred in concluding defendant's gated, secluded property was impliedly open to the public and therefore police officer had implied consent to enter).

The Court of Appeals correctly adhered to the principles enunciated in *Hill* when applying the substantial evidence standard to review the trial court's findings in the motion to suppress. *Kipp*, 171 Wn. App. at 18. We should do the same.

Fairhurst, J.

González, J.

Wiggins, J.