# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 78974-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| | UNPUBLISHED OPINION |
| MARCO GERARDO MEZA, | |
| Appellant. | |

LEACH, J - Marco Meza appeals his conviction for possession of methamphetamine. He claims the trial court should have suppressed evidence of methamphetamine police found in a car he was driving. Because Meza consented to a search of the car, did not revoke that consent, and the officer who searched the car found the methamphetamine in plain view, we affirm.

FACTS

On May 2, 2016, King County Sheriff's Deputy Benjamin Blakeman stopped Meza for traffic violations. No one else was in the car. When Blakeman asked Meza for identification, Meza handed him a driver's license that had a hole punched in it, indicating it was invalid. Blakeman ran a Department of Licensing (DOL) records check and found Meza's license was suspended in the second degree. Blakeman then asked Meza to step out of the car and he arrested him for driving while license suspended in the second degree. When Meza exited the

car, Blakeman noticed a single bullet in the cup holder of the car's center console.

Once Meza was outside of the car, Blakeman read him his Miranda rights. Meza said he understood his rights and was willing to speak with Blakeman. Meza told Blakeman the car belonged to his sister, but he had been in possession of the car for "a while." Blakeman asked about the bullet he saw in the car. Meza told him he had a collection of bullets. Blakeman also asked if there had ever been a gun in the car and Meza said he thought his sister had one. When Blakeman asked if he had ever kept a gun in the car, Meza responded, "I don't think so."

A second officer, Deputy Caesar Molina, arrived while Blakeman was talking with Meza. Molina walked around the empty car, looked through the car windows, and saw the butt/grip of a handgun on the floor behind the driver's seat. Molina reported this information to Blakeman, who then asked Meza if there was a gun in the car. Meza said, "Yeah, there is."

Blakeman asked Meza if he would consent to a search of the car. Meza said, "Yes, I want to cooperate," and signed a consent to search form, which Blakeman had read aloud to him.

The form states:

> I, Meza, Marco G. authorize deputies of the King County Sheriff's Office or their representatives to search the property described at: WA/AXP 3104 @ 15600 4 Ave SW
> I understand that I have the right to refuse the search. I have the right to limit the scope of the search, and I have the right to stop the search at any time. I also understand I have the right to refuse to give permission to search and require the deputies to obtain a search warrant. I realize that the deputies may take any property

which they may believe has evidentiary value and any items found m[a]y be used as evidence against me or any other person in court. My consent has been given knowingly, freely, and voluntarily, without threats of duress against me or without promise of reward.

Blakeman searched the car while Molina remained with Meza, who was sitting on the bumper of the patrol car and had full view of Blakeman's search. Blakeman found the handgun under the driver's seat. Partially, on top of the handgun, was what looked like a tackle box. Blakeman had to move the box in order to remove the handgun. The box had a see-through, clear, plastic top through which Blakeman saw several baggies containing a white crystalline substance.

Blakeman removed the box from the car and showed it to Meza. Blakeman asked him if the box was his and he said, "No, but I know who it belongs to. My friend." When Blakeman asked him what the substance inside the baggies was Meza said, "Crystal," which Blakeman knew from his training and experience is a street name for crystal methamphetamine. Blakeman then opened the box and field tested the substance, which tested positive for amphetamines and methamphetamines. Meza never told Blakeman not to open the unlocked box.[1]

Blakeman also searched the trunk. There he found a journal with Meza's name on it and a subwoofer speaker with a sock around it. Meza explained that he wrapped the sock around the subwoofer to reduce its vibration.

Blakeman asked Meza again to whom the box belonged. Meza said it belonged to a friend but did not provide a name. Meza told Molina that the drugs

---

[1] Meza does not assign error to the court's finding that "there is no evidence that the box/case was locked in any way," and points to no evidence to the contrary.

3

belonged to someone named Bartolo Rodriguez, who was riding with him in the car that night. Meza showed his phone to both officers and pulled up a phone number for Rodriguez and a picture of a firearm he said he had purchased from Rodriguez.[2]

The State charged Meza with one count of violation of the Uniform Controlled Substances Act possession of methamphetamine. Meza asked the court to suppress evidence of the methamphetamine, claiming the warrantless search of the car was unlawful. At the hearing on this request, both Blakeman and Molina testified that at no time during the search did Meza revoke or limit his consent to the search. Meza did not testify. The court denied Meza's suppression request concluding that the search of the car was within the scope of Meza's valid consent to search and was also lawful under the plain view doctrine. A jury found Meza guilty as charged. Meza appeals.

DISCUSSION

Meza challenges the trial court's refusal to suppress evidence of the drugs, claiming (1) the search exceeded the scope of his consent because he only gave consent to search for the gun, (2) he revoked, restricted, and limited his consent by stating that the box belonged to someone else, and (3) the plain view exception to the warrant requirement does not apply.

We review a trial court's conclusions of law de novo.[3] We review a trial court's findings of fact after a suppression hearing for substantial evidence

---

[2] While Molina testified that Meza gave him the name of the owner of the box, Blakeman testified that Meza never gave him the name of the owner of the box but gave him the name of the person "who was associated with the sale of the firearm" that he found in the car.

[3] State v. Kipp, 179 Wn.2d 718, 726, 317 P.3d 1029 (2014).

4

where, as here, the trial court weighed competing evidence and resolved credibility issues.[4]

"As a general rule, warrantless searches and seizures are per se unreasonable."[5] But, courts recognize a few carefully drawn exceptions to the warrant requirement including consent.[6] A consensual search is valid if (1) the consent is voluntary, (2) the person granting consent has the authority to consent, and (3) the search does not exceed the scope of the consent.[7]

Meza challenges the trial court's findings that his consent was voluntary and he had authority to consent to the search. But, his argument addresses only the scope of the consent. We consider these unargued challenges abandoned.[8]

Substantial evidence supports the challenged findings. Blakeman testified that after he advised Meza of his <u>Miranda</u> rights, Meza said he wanted to cooperate and agreed to a search of the car. Meza also signed a form stating: "My consent has been given knowingly, freely, and voluntarily, without threats of duress against me or without promise of reward." Meza's statement that he had "been in possession of the car 'for a while,'" establishes his authority to consent to the search of the car, as does evidence of Meza's belongings in the car (his bullet in the cupholder, his gun behind the driver's seat, his journal and subwoofer in the trunk).[9]

---

[4] <u>Kipp</u>, 179 Wn.2d at 727.
[5] <u>State v. Reichenbach</u>, 153 Wn.2d 126, 131, 101 P.3d 80 (2004).
[6] <u>Reichenbach</u>, 153 Wn.2d at 131.
[7] <u>Reichenbach</u>, 153 Wn.2d at 131.
[8] <u>State v. Veltri</u>, 136 Wn. App. 818, 821-22, 150 P.3d 1178 (2007).
[9] <u>State v. Cantrell</u>, 124 Wn.2d 183, 188, 875 P.2d 1208 (1994), <u>State v. Rison</u>, 116 Wn. App. 955, 961, 69 P.3d 362 (2003).

Meza claims the search exceeded the scope of his consent, contending he only consented to a search for the gun. But, nothing in the record shows he limited his consent to a search for the gun. Rather, the evidence shows he consented to a general and unqualified search of the car. Blakeman testified he asked Meza if he would be willing to consent to a search of the car, Meza responded, "Yes, I want to cooperate," and he agreed to sign a consent form. The consent form stated that he authorized a search of property described as "WA/AXP 3104 @ 15600 4 Ave SW," which described the license plate of the car and the location the car was pulled over. The form also stated: "I realize that the deputies may take any property which they may believe has evidentiary value and any items found m[a]y be used as evidence against me or any other person in court."

The record does not support Meza's claim that the "objective circumstances" indicate Blakeman "appeared to decide to seek consent and conduct a search based on his observations of a bullet and his questions regarding the possible presence of a gun in the car," Rather, the objective circumstances establish Meza gave consent to a general search of the car. When Blakeman asked for his consent to search the car, Blakeman never said he was only searching for the gun. The form clearly stated Meza had "the right to limit the scope of the search," but nowhere on the form did it state the deputies could only search for the gun. In fact, the form stated the deputies may take "any property" of evidentiary value. Not only did Meza sign the form without any limitations, he never once said he only consented to a search for the gun even

6

after admitting the gun was in the car, nor did he stop the search when Blakeman searched the trunk even though the gun was behind the driver's seat. Substantial evidence supports the court's findings that Meza "did not restrict the search of the car at any time in any way," and the search and seizure of the box did not exceed the scope of Meza's consent to search.

Meza next argues that even if he gave valid consent to search the car, he revoked that consent once he disavowed ownership of the box. He claims the objective circumstances established an oral revocation of his written consent. He points to Blakeman's question about the ownership of the box and his response that it belonged to someone else. Citing State v. Parker,[10] he claims "law enforcement knew that they did not have the authority to search property of a person who was not the driver who was stopped because of reasonable suspicion," and "must be prepared to cease a search on that basis, certainly if the driver/consentor advises that the property is not his."

As Meza points out, Blakeman testified he had Molina stand with Meza near the car "so that if Mr. Meza at any time chose to restrict or revoke consent, he could do so." And, as discussed above, there is no evidence Meza ever restricted or revoked his consent to search the car even when Blakeman showed him the tackle box. He did not tell Blakeman not to open it or to otherwise stop the search. He simply told Blakeman the box was not his and it contained "Crystal." He said nothing while Blakeman opened the unlocked box and examined the contents. Substantial evidence supports the court's finding that

---

[10] 139 Wn.2d 486, 987 P.2d 73 (1999).

7

Meza's statement that the box was not his "did not revoke, restrict or invalidate his prior consent to search the car and its contents."

Meza's reliance on Parker is misplaced. Unlike here, Parker addressed the privacy rights of nonarrested vehicle occupants and involved searches of property belonging to passengers who were present during the search of a car but not under arrest.[11] The court held that article I, section 7 of the Washington State Constitution "protects nonarrested, nonsuspected third parties and their recognizable personal effects against categorical searches based merely on presence in an automobile in which somebody else is arrested."[12] The court found the searches at issue invalid (searches of passengers' jacket pocket and purse) noting, "It is undisputed police knew the items searched belonged to individuals who were not under arrest."[13] Here, the purported owner was not a passenger present during the search nor was it undisputed that police knew the tackle box belonged to someone other than Meza. Rather, the box was under the driver's seat. Meza knew what it contained and the trial court was free to discredit Meza's self-serving statements that he did not own it. Parker does not apply.

Finally, Meza argues the plain view exception does not apply. "[A] plain view seizure is legal when the police (1) have a valid justification to be in an otherwise protected area, provided that they are not there on a pretext, and (2)

---

[11] 139 Wn.2d at 502-503.
[12] 139 Wn.2d at 505.
[13] 139 Wn.2d at 504.

are immediately able to realize the evidence they see is associated with criminal activity."[14]

Meza claims Blakeman "had no authority to search for or open the tacklebox, thus there was no prior lawful basis for that intrusion," contending the trial court improperly relied on State v. Gonzalez.[15] Br. of Appellant at 19.[16] In Gonzales, the court held that police properly seized marijuana and pills in plain view during a consensual search for stolen property.[17] Meza attempts to distinguish Gonzales, arguing that unlike where "the police were not straying from the scope of the consent search of the home when they inadvertently saw the apparent drugs lying there", here Blakeman was "deviating dramatically" from the scope of consent. The record establishes otherwise. As discussed above, substantial evidence supports the trial court's finding that Meza consented to a general search of the car. Meza's argument is no more convincing if the scope of consent was limited to a search for the gun as he claims. The tackle box was on top of the gun and Blakeman had to move it to retrieve the gun, so it was well

---

[14] State v. Morgan, 193 Wn.2d 365, 371, 440 P.3d 136 (2019).
[15] 46 Wn. App. 388, 731 P.2d 1101 (1986).
[16] Meza assigns error to the court's findings that Blakeman immediately recognized the substance as evidence/contraband but does not argue this in his brief. He contends only that Blakeman did not have a valid justification for searching in that area. So, he has abandoned those assignments of error. Veltri, 136 Wn. App. at 821-22. Substantial evidence supports the court's findings.
[17] 46 Wn. App. at 401.

within the scope of a search for the gun.

We affirm.

_Leach, J._

WE CONCUR:

_Dwyer, J._