**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　Respondent,<br><br>　　　　v.<br><br>MORRIS KAMARA,<br><br>　　　　　　　　Appellant. | No. 84473-3-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

MANN, J. — Under Washington's privacy act, RCW 9.73.030, it is generally unlawful to record a private conversation without first obtaining consent of all persons engaged in the conversation. And evidence obtained in violation of the privacy act is inadmissible at trial. Morris Kamara appeals his conviction for rape in the second degree. Kamara argues that the trial court erred in admitting the victim's cell phone audio recording of the rape because it was a private conversation made without his consent and violated the privacy act. Because the portion of the recording at issue was not a private conversation but a recording of a sexual assault, the trial court did not err in admitting the audio recording at trial. We affirm.

No. 84473-3-I/2

I

A

Kamara and B.T. met at a mutual friend's birthday party in July 2019. B.T. had seen Kamara before at various events with members of the Liberian community. B.T. knew Kamara as JR. After the party, Kamara sent B.T. a friend request on Facebook. They began messaging each other on Facebook. Kamara asked B.T. out but she declined because she was in a relationship. Kamara was persistent and asked several more times.

Because Kamara kept pushing, on August 30, 2019, B.T. agreed to meet with him. B.T. texted Kamara her address and later that night he arrived outside of her apartment. B.T. testified at trial to the events that occurred that evening. Once B.T. got in Kamara's car, he immediately drove off. B.T. asked where they were going and Kamara responded that they were going to his place to smoke hookah and watch movies. B.T. repeatedly told Kamara that she had to be home soon in order to sleep before her 8:30 a.m. shift the next day.

Once at Kamara's apartment, Kamara offered B.T. a drink. B.T. declined, but Kamara poured her some wine. They watched a program on TV. After some time, Kamara sat next to B.T. on the couch and then he began putting his hands on her, stroking down her arm, and leaning against her. B.T. got up to use his bathroom and give herself some time to think.

While in the bathroom, B.T. activated a recording app on her phone. At first, she just played with it, recording sounds and then listening. The next time she activated it,

-2-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84473-3-I/3

she got a notification and switched to a different app on her phone without stopping the recording.[1]

When she returned to the living room, B.T. sat farther away from Kamara on the couch and continued scrolling through her social media to distract herself. Kamara moved closer and began making sexual remarks and advances toward B.T. B.T. told him she had to go, since she had work the next morning, but Kamara insisted she stay until 2:00 a.m. B.T. told Kamara "no" multiple times and told Kamara not to touch her. B.T. told Kamara she would just nap on the couch until he took her home at 2:00 a.m., but he wanted her to go to his room.

Kamara forced B.T. into his bedroom by pulling her off the couch and pushing her back until she was pushed onto his bed. He pinned her arms to the bed and then used his full body weight on her so she couldn't move. He pulled her pants down and raped her while she cried and repeatedly told him "no, don't, and I don't want to do this." B.T. tried to fight him off, but did not succeed. After B.T. continued to cry and beg Kamara to stop, he finally got off of her and walked out of the room. B.T. testified that she felt defeated. When Kamara returned and started touching her again, B.T. didn't fight, she "just let him do what he had to do."

Kamara then offered to take her home. Once home, B.T. plugged her phone, which had died at some point while at Kamara's home, into its charger. When the phone turned on, she texted her best friend about what had happened. The next

---

[1] When first interviewed by Kent Police Officer Loobai Hong, B.T. told him she started the recording when she first got to Kamara's house.

-3-

No. 84473-3-I/4

morning, she showered and went to work.  She also texted another friend what had happened at Kamara's home.

That evening, B.T.'s friend took her to Auburn Regional Medical Center where B.T. underwent a sexual assault examination.  She was interviewed by Officer Hong, briefly, while in the emergency room.

The next day, B.T. discovered the audio recording on her cell phone.  She e-mailed the recording to Officer Hong.

Kamara was arrested and charged with rape in the second degree.

B

Before trial, Kamara moved under CrR 3.6 to suppress the audio recording as inadmissible under Washington's privacy act, RCW 9.73.030.  The State sought only to admit the portion of the recording that captured the rape.

After analyzing the audio recording in open court, the trial court issued detailed findings of the contents, breaking down the 28 minutes, 50 seconds long recording into discrete segments from beginning to end.  At various points, two voices can be heard, one male and one female.  The voices were identified at trial to be Kamara and B.T.  The trial court's findings included that from the start of the recording to minute 20:45, the recording captures music, noises, TV, laughter, and some unintelligible discussion.  At the 14-minute mark, B.T. says, "don't touch me."  "At 17:20 – the female voice states, 'I don't want to drink anymore' and at 18:50 – she states 'don't, I can walk.'"  The court's findings continue:

> At 20:45 – there is conversation that goes "let me sleep" and the female voice says "no – don't."  The recording captures the sound of a female crying.

-4-

No. 84473-3-I/5

The male voice responds "no you're good[.]"

From that point forward, the remainder of the recording is primarily statements that are interspersed with crying, requests to stop, male laughter, statements from the female to stop, statements from the female of "leave me alone, I'm scared, I don't want to do this, JR stop it, it hurts," and additional laughter from the male voice.

This continues to the end of the tape.

The recording also includes the female voice saying "what are you doing, I'm begging you please stop. Get off me please."

The trial court concluded:

From 20:45 to the end of the recording – the court finds that the contents of the recording do not capture a conversation. What is recorded is not an exchange of information. Instead, what it captures is an act of sexual assault.

Pursuant to State v. (David) Smith, 85 Wn.2d 840, 540 P.2d 424 (1975), the contents of the recording from 20:45 through the end of the recording is not a conversation and RCW 9.73.030 does not apply."[2]

At trial, Kamara maintained his objection to the admissibility of the recording but argued that, if the court admitted the excerpt proposed by the State, the entire recording should come in under the rule of completeness. As a result, following B.T.'s testimony,[3] the entire recording was played for the jury.

The jury found Kamara guilty of rape in the second degree.

Kamara appeals.

---

[2] Alternatively, the trial court held that if the last nine minutes of the recording were construed as a conversation, they fell within the privacy act exception for communications by a hostage holder. RCW 9.73.030(2)(d). Because we affirm the trial court's determination that the last nine minutes of the recording were not a conversation, we do not address the trial court's alternate holding that an exception to the privacy act applied.

[3] Kamara did not object to or attempt to exclude B.T.'s testimony at trial.

No. 84473-3-I/6

II

Kamara argues that the trial court erred when it admitted the audio recording because the recording was a private conversation under RCW 9.73.030 and therefore inadmissible under RCW 9.73.050.  We disagree.

This court reviews alleged violations of the privacy act de novo.  State v. Bilgi, 19 Wn. App. 2d 845, 855, 496 P.3d 1230 (2021).  "[S]ince whether the 'facts' are encompassed by the statutory protections presents a question regarding statutory interpretation, de novo review is the appropriate standard of review."  State v. Kipp, 179 Wn.2d 718, 728, 317 P.3d 1029 (2014).

"Washington's privacy act is considered one of the most restrictive in the nation."  Kipp, 179 Wn.2d at 724.  Under the privacy act, it is generally unlawful to record a private conversation without first obtaining consent of all persons engaged in the conversation.  RCW 9.73.030(1)(b).  Information obtained in violation of the act is inadmissible in any civil or criminal case.  RCW 9.73.050.

A

Kamara argues in his brief that the entire recording is a conversation and it was error for the trial court to parse the recording and then divide it into parts that were conversation and parts that were not conversation.  Kamara offers no authority for this argument.  At oral argument, counsel for Kamara conceded that in this case it was acceptable to segregate the last nine minutes of the recording.[4]  We accept Kamara's concession.

---

[4] Wash. Ct. of Appeals oral argument, State v. Kamara, No. 84473-3-I (Sept. 20, 2023) at 2 min., 24 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023091198/?eventID=2023091198.

-6-

No. 84473-3-I/7

Cases considering the privacy act appear to routinely determine whether a part of a recording constitutes conversation. For example, in State v. Williams, 94 Wn.2d 531, 549, 617 P.2d 1012 (1980), our Supreme Court held that under the privacy act, the trial court "properly suppressed the recordings and testimony concerning the conversations with Williams and his alleged co-conspirator, and correctly ruled admissible those parts of the conversations relating to threats of extortion, blackmail, bodily harm or other unlawful requests of a similar nature" (emphasis added). See also State v. John Smith, 189 Wn.2d 655, 669, 405 P.3d 997 (2017) (Gordon McCloud, J., concurring) ("I agree that the portion of the recording containing screams does not constitute a 'conversation'") (emphasis added).

The trial court appropriately reviewed the entire recording, determined that portions were conversation and portions were not conversation. Following this review, the court determined that the last nine minutes of the recording were not conversation and thus admissible under the privacy act. The trial court did not err by considering the recording in parts.

B

In determining whether a communication between individuals constitutes a "conversation" under the privacy act, courts use the ordinary meaning of the term: "oral exchange, discourse, or discussion." State v. David Smith, 85 Wn.2d 840, 846, 540 P.2d 424 (1975). Recordings of sounds that do not constitute a "conversation" do not implicate the privacy act. David Smith, 85 Wn.2d 846. In particular, sounds of an assaultive act are not a conversation protected by the privacy act; a recording of such noise is admissible. John Smith, 189 Wn.2d at 663-64.

-7-

No. 84473-3-I/8

In <u>David Smith</u>, a shooting victim, Nicholas Kyreacos, carried a tape recorder to a meeting where he suspected potential foul play. 85 Wn.2d at 842-43. The recording starts with remarks from Kyreacos and a companion about their destination and arrangements, and, when they arrive, Kyreacos narrates the scene as he walks. <u>David Smith</u>, 85 Wn.2d at 844. "Then, suddenly are heard the sounds of running footsteps and shouting, the words 'Hey!' and 'Hold it!', Kyreacos saying 'Dave Smith,' and a sound resembling a gunshot." <u>David Smith</u>, 85 Wn.2d at 844. Several more words are exchanged between Smith and Kyreacos, another shot is heard, then Kyreacos screaming and begging for his life, followed by more shots, and silence. <u>David Smith</u>, 85 Wn.2d at 844-45. Then voices are heard saying, "We've already called the police" and "Hey, I think this guy's dead man." <u>David Smith</u>, 85 Wn.2d at 845.

The Supreme Court held, "We are convinced that the events here do not comprise 'private conversation' within the meaning of the statute. Gunfire, running, shouting, and Kyreacos's screams do not constitute 'conversation' within that term's ordinary connotation of oral exchange, discourse, or discussion." <u>David Smith</u>, 85 Wn.2d at 846. Thus, the recording did not fall within the prohibition of RCW 9.73.030 and its admission was not prohibited under RCW 9.73.050. <u>David Smith</u>, 85 Wn.2d at 846. In doing so, the Supreme Court confined its holding to the "bizarre facts" of the case and declined to adopt a definitive definition of "private conversation" applicable to all cases. <u>David Smith</u>, 85 Wn.2d at 846.

In <u>John Smith</u>, during a violent assault of his wife, Smith used the home's landline to dial his cell phone to help locate it. 189 Wn.2d at 657-58. The cell phone's voice mail system recorded the incident. <u>John Smith</u>, 189 Wn.2d at 658. The recording

-8-

No. 84473-3-I/9

contained "sounds of a woman screaming, a male claiming the woman brought the assault on herself, more screams from the female, name calling by the male," and a verbal exchange between the two. John Smith, 189 Wn.2d at 658. The recording was admitted at trial and Smith was found guilty of attempted second degree murder. John Smith, 189 Wn.2d at 660. The Court of Appeals reversed, holding the trial court erred in denying the motion to suppress because the recording was of a "private conversation" and Smith had unlawfully recorded it. John Smith, 189 Wn.2d at 660.

The Supreme Court, in an opinion signed by four justices, reviewed the recording and found it like the recording in David Smith, "[t]he recording contains shouting, screaming, and other sounds, but it also contains brief oral exchanges between Mr. and Mrs. Smith in which Mr. Smith tells his wife that he is going to kill her, and she responds, 'I know.'" John Smith, 189 Wn.2d at 664. The Supreme Court held "[b]ecause the voice mail recording primarily contains the sounds of a violent assault being committed, we hold that based on David Smith, the content of the voice mail recording here is not of a 'conversation' as contemplated by the privacy act." John Smith, 189 Wn.2d at 664. Thus, the recording did not fall within the prohibitions of the privacy act and its admission was not prohibited. John Smith, 189 Wn.2d at 664.

Four justices concurred, but would have held that because the recording contained not just sounds but also "conversation" the privacy act applied.[5] John Smith, 189 Wn.2d at 674 (Gordon McCloud, J., concurring). But the conversation fell within the

---

[5] In a separate concurrence, Justice Gonzáles would have held that John Smith had no right to challenge the admissibility of the recording because he made the recording. John Smith, 189 Wn.2d at 669.

No. 84473-3-I/10

threat exception to the privacy act and thus was admissible. John Smith, 189 Wn.2d at 674 (Gordon McCloud, J., concurring).[6]

Kamara argues that we should not rely on David Smith because the Supreme Court declined to definitively define a "private conversation" under the privacy act because of the bizarre circumstances of the case. While true, David Smith remains binding precedent. And nothing in John Smith overruled or abrogated David Smith. Indeed, in John Smith, eight justices agreed that under David Smith certain sounds do not constitute conversation. John Smith,189 Wn.2d. at 664 ("the sounds of a violent assault" is not a conversation), and 189 Wn.2d at 669 (Gordon McCloud, J., concurring) ("I agree that the portion of the recording containing screams does not constitute a 'conversation'") (emphasis added).

And even if not fully binding, the lead opinion of John Smith is "highly persuasive." Koenig v. Pierce County, 151 Wn. App. 221, 231, 211 P.3d 423 (2009) (citing Texas v. Brown, 460 U.S. 730, 737, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1993)).[7]

---

[6] In response, Justice Madsen, lead opinion author, noted:

Justice Gordon McCloud's concurrence contends that the presence of verbal exchanges in the recording at issue here distinguishes this case from David Smith and that we improperly "stretch[ ]" the analysis in the David Smith case by applying it here. Concurrence (Gordon McCloud, J.) at 1005. But, as noted, verbal exchanges were also present in David Smith in the recording between the victim and the assailant . . . The recording in David Smith and the voice mail recording here contain the sounds of a violent assault being committed. Application of David Smith is appropriate here.

John Smith, 189 Wn.2d at 664 n.4.

[7] While not binding, we note that we have relied on the lead opinion in John Smith in at least one unpublished opinion. In State v. Tayler, No. 81001-4-I slip op. at 13 (Wash. Ct. App. Jan. 3, 2022), this court cited John Smith and held "the recording is peppered with non-conversational sounds of physical assaults, screaming, and general violence, all falling outside the scope of the Privacy Act."

-10-

No. 84473-3-I/11

C

Based on our de novo review of the recording, we agree with the trial court's conclusion that the last nine minutes of the recording do not constitute a conversation, and instead record an assault.

The audio recording is 28 minutes and 50 seconds long.[8]  At various points, two voices can be heard, one male and one female.[9]  From the start of the recording to 20 min., 45 sec., the recording captures music, noises, TV, laughter, and some unintelligible discussion.  At the 14-minute mark, B.T. says, "stop touching me . . . can you do me a favor and not touch me."  At 14 min., 10 sec., Kamara responds, "I can't, I'm sorry, I can't."  At 14 min., 33 sec., B.T. asks, "what happened to you're safe with me?"  At 16 min., 47 sec., Kamara tells B.T. to "put that damn phone down, focus on me."  At 18 min., 37 sec., there are muffled noises and B.T. says, "don't, I can walk . . . I can sleep on the couch."

At 20 min., 45 sec., the recording captures B.T. saying, "no, no, no let me sleep," "no, don't," "JR stop" and then captures the sounds of B.T. crying.  At 21 min., 20 sec. and 21 min. 56 sec., Kamara tells B.T., "no you're good."  At 22 min.,14 sec., B.T. is then heard crying, repeatedly saying "no," "please stop," "I'm not doing this."  At 22 min. 30 sec., Kamara says where B.T.'s phone is.  B.T. says, "I'm scared," "JR, JR stop it hurts," and "wait, why are you doing this, I'm begging you please stop, no, get off me, get off me please."  23 min., 38 sec.; 24 min., 10 sec.; 26 min., 02 sec.  While B.T. sobs

---

[8] The audio recording is available as exhibit 19.  All times and quotes from these two paragraphs come from this exhibit.

[9] There are two rough transcripts of the audio recording in the record.  One prepared by the State and one prepared by the trial judge.

No. 84473-3-I/12

and begs Kamara to stop, Kamara laughs. From 26 min., 56 sec., to the end of the recording, B.T. is heard crying with music in the background.

At oral argument, Kamara's counsel repeatedly asserted that to be a conversation there must be "an exchange of ideas and words."[10] We don't disagree with this characterization of a conversation. But there is no "exchange of ideas and words" in the last nine minutes of the recording. And unlike in both Smith cases, the recording did not capture brief oral exchanges between B.T. and Kamara. We agree with the trial court that the last nine minutes of the recording contains the sounds of a sexual assault being committed. This portion of the recording is not a private conversation as contemplated by the privacy act.

The trial court did not err in admitting the recording.[11]

We affirm.

Mann, J.

WE CONCUR:

Feldman, J.                    Díaz, J.

---

[10] Wash. Ct. of Appeals oral argument, supra, at 2 min., 48 sec. ("an exchange of words and ideas verbally constitutes conversation"); 8 min., 18 sec. ("if there is an exchange of ideas and words, it's a conversation"); 17 min., 05 sec. ("laughter alone isn't" an exchange of words and ideas).

[11] Finally, the invited error doctrine prohibits the defendant from setting up an error at trial and then complaining of it on appeal. In re Pers. Restraint of Thompson, 141 Wn.2d 712, 723, 10 P.3d 380 (2000). To the extent there was error in admitting portions of the recording that preceded the last non-conversational nine minutes, Kamara invited this error.