# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEFFREY BRITTIG, | No. 57408-0-II |
| Respondent/Cross Appellant, | |
| v. | |
| MASON COUNTY FIRE DISTRICT #6, a public agency, | UNPUBLISHED OPINION |
| Appellant/Cross Respondent. | |

CRUSER, J. — Jeffrey Brittig submitted multiple requests under the Public Records Act (PRA)[1] seeking records relating to a live-in firefighter quarters project being completed by the Mason County Fire District No. 6 (the District). Brittig's first amended complaint asserted that the District had altered a record that he received in response to his request labeled PRR 2020-018. During the litigation, Brittig emailed the District's attorney, stating that he believed the District had silently withheld records relating to his request labeled PRR 2019-011, and he amended his complaint again to include a claim regarding that request more than one year after the District had sent its last installment of records to Brittig.

Following cross motions for judicial review and cross motions for reconsideration, the trial court ruled that the District had violated the PRA by altering a record it sent to Brittig in response to PRR 2020-018, that his claim regarding PRR 2019-011 was not barred by the one-year statute

---

[1] Chapter 42.56 RCW.

of limitations under the PRA, and that the District violated the PRA in its response to PRR 2019-011. The trial court imposed a $94,300 penalty against the District for these violations.

The District appeals, arguing that the trial court erred in ruling (1) that it had violated the PRA in its response to PRR 2020-018, (2) that Brittig's claim regarding PRR 2019-011 was not barred by the one-year statute of limitations, and (3) that the District's response to PRR 2019-011 violated the PRA. The District also argues that in the event we affirm the trial court's rulings regarding the PRA violations, we should nevertheless remand for the trial court to recalculate the penalty assessment against the District, and, in a cross appeal, Brittig agrees. The District also seeks reversal of the attorney fee award in favor of Brittig below, and Brittig requests attorney fees on appeal.

We hold that the District did not violate the PRA in its response to PRR 2020-018 and that Brittig's claim as to PRR 2019-011 is barred by the one-year statute of limitations. Accordingly, we reverse the trial court's orders on judicial review and on reconsideration. Because the District did not violate the PRA, both the penalty award against the District and the attorney fee award to Brittig are vacated. We reverse and remand for further proceedings consistent with this opinion.

FACTS

I. BACKGROUND

Brittig was a former volunteer firefighter with the District. On April 2, 2019, Brittig attended a meeting of the Hood Canal Improvement Club in which Captain Cody Daggett[2] and Commissioner Richard Heinrich of the District gave a presentation about a planned expenditure

---

[2] We refer to this individual as Captain Daggett because that was his title during the relevant events. However, his title is now Assistant Chief.

for a live-in firefighter quarters project for on-duty volunteer firefighters. This meeting was contentious and, after the meeting, there was a brief confrontation between Brittig and Captain Daggett regarding some notes Captain Daggett made during the meeting that Brittig wanted to see. Following this meeting, Brittig made a series of public records requests to the District.

A. Brittig's PRA Requests

*1. PRR 2019-011*

On April 5, 2019, Brittig sent an email to Heather Fredrickson, an office manager for the District, requesting the following documents under the PRA:

> All records showing the formation of the decision (including but not limited to) the record of the discussion, deliberation, or Business Case Analysis for the new firefighter quarters.
>
> Meeting minutes identifying the first public disclosure and or discussion related to the new firefighter quarters.
>
> The contract for each firefighter residing in the new firefighter quarters.
>
> The resumes (with redacted personal information) showing the recruits['] past job experience and prior fire department jobs.

Clerk's Papers (CP) at 315. The District labeled this request PRR 2019-011. The District notified Brittig by email on April 23, 2019 that the first installment of responsive records was available, and someone else picked the records up on Brittig's behalf on May 8, 2019. An additional installment of responsive records was provided in late June 2019.

> On September 16, 2019, Brittig emailed Chief Clint Volk stating:
>
> I am still waiting for you to fully respond to my April 5, 2019 public record request; in which I asked for <u>all records</u> showing the formation of the decision (including but not limited to) the record of discussion, deliberation, or business case analysis for the new fire fighter quarters.

> **I have still not received the video recording of those meetings and I ask that please [sic] immediately provide them to me.**

*Id.* at 731. The videos were put on a flash drive and mailed to Brittig on October 3, 2019.

*2. PRR 2020-018*

On April 17, 2020, Brittig submitted another public records request for the District's April 16, 2018, "Commission Meeting Minutes" and the metadata associated with the record. *Id.* at 311. This request was labeled PRR 2020-018. Brittig asserted that he made this request because the District's representatives at the April 2, 2019, presentation stated that the total spending on the live-in firefighter quarters project had been approximately $165,000, but Brittig maintained that a record he received in response to PRR 2019-011 stated that the "total project cap" was $150,000. *Id.* at 654 (boldface omitted). Accordingly, Brittig's request sought "a record he knew to exist." *Id.* at 61. The District provided responsive documents to Brittig on May 6, 2020.

## II. PRA Lawsuit

A. Brittig's Claims

Brittig brought a lawsuit against the District for alleged PRA violations on April 23, 2020. On August 24, 2020, the trial court granted Brittig's motion to amend his complaint. On the same day, Brittig sent Jeff Myers, the District's attorney, an email that stated:

> It has come to my attention based on the video of the April 16, 2018 Business meeting, that your client silently withheld records related to PRR 2019-011. Specifically the supporting documents prepared by Capt Daggett given to the commis[s]ioners to help them formulate their decision on the fire fighter quarters project.
>
> Will you consent to another amendment?

*Id.* at 869. Myers responded:

4

> First things first. Let's complete the first amendment before going to the second, or third or fourth. I have substantial concerns about how you keep moving the goal posts in this matter.
>
> Second, if you want to propose a second amended complaint, send me one after we have the first amended complaint completed and I will consider it.

*Id.*

Brittig filed his first amended complaint on August 27, 2020, which added a claim concerning PRR 2020-018. Brittig alleged that, in contrast to the record he received in response to PRR 2019-011, the District "provided a record that had been speciously altered to read '*total home purchase [cap] of $150,000*' and not *total project cap* as memorialized in the original approved Business Meeting Minutes." *Id.* at 61.

Brittig moved for leave to file a second amended complaint two months later, on October 27, 2020. This motion was granted on December 11, 2020, and Brittig filed the second amended complaint on December 21. The second amended complaint added a claim concerning PRR 2019-011, alleging that the District silently withheld records related to his request, as referenced in his prior email to Myers. Specifically, Brittig claimed that the District provided only meeting minutes and a strategic plan in response to his request for "all records showing the formation of the decision," and that a video of a March 18, 2018, special business meeting revealed the presence of other records that were not provided to him. *Id.* at 255.

B. Cross-Motions for Judicial Review

Both parties sought judicial review by the trial court.

The parties each asserted that the other had altered records that were filed with the court. For example, as referenced above, Brittig stated in a declaration that the meeting minutes for the April 16, 2018, meeting of the Board of Fire Commissioners that were provided by the District in

response to PRR 2019-011 authorized a "total project spending cap" of $150,000 for the firefighter quarters. *Id.* at 776. Brittig "shared this information" with Kimberly Cooper, another member of the public, who purported to attach the record to her declaration, which was provided with Brittig's second amended complaint. *Id.* Brittig's claim regarding PRR 2020-018 was predicated on the record provided in response to PRR 2019-011 containing this language because, he claimed, the record provided in response to PRR 2020-018 had been altered to state that the "total home purchase cap" was $150,000. *Id.* at 778 (emphasis omitted). Brittig's supplemental declaration attached an email from Chief Volk sent on April 23, 2018, the day before the meeting at which the April 16, 2018, minutes were approved by the Board, indicating that Brittig received a copy of draft meeting minutes that used the term project rather than home purchase prior to his request for the approved minutes.

By contrast, the District maintained that the documents provided to Brittig in response to both of his requests authorized a "total home purchase cap" of $150,000. *Id.* at 130, 138. Fredrickson and Chief Volk stated in declarations that the minutes the District provided in response to PRR 2020-018 were the same as those provided in response to PRR 2019-011, and Commissioner Heinrich declared that the minutes provided under PRR 2020-018 "are identical to the minutes that were approved by the Board and which are on file with the District." *Id.* at 352. The April 16, 2018, minutes were approved by the Board of Fire Commissioners at a meeting on April 24, 2018. Both Commissioner Heinrich and Chief Volk described the process for approving meeting minutes, which included sending a draft to the commissioners who then suggest changes prior to the meeting at which the minutes are approved.

Brittig's materials included a document he claimed to be a report from the State Auditor regarding the live-in firefighter quarters. Brittig declared that the auditor sent him a copy of the report of its January-February 2021 audit. At the outset of the auditor's analysis, the report states that the project was discussed with Chief Volk and Fredrickson, who "explained that their analysis found the project to be a public works project and not a purchase" because the project required "preparation of the site and installation of the modular home as well as getting the home connected to utilities." *Id.* at 801. The report referenced the meeting minutes that authorized "the purchase of a modular home with a purchase cap of $150,000 on 4/16/2018." *Id.* at 805. The total project cost was listed as $150,858.66, which exceeded the $150,000 cap due to ADA modifications. This material alleged to be from the auditor is unauthenticated, contains no identifying information, and is incomplete.

In addition, the District argued that Brittig's claim regarding PRR 2019-011 was time barred under RCW 42.56.550(6). The District asserted that the production of videos on October 3, 2019 was the final production of records in response to PRR 2019-011, and that the second amended complaint alleging that the District's response to this request violated the PRA was not filed until December 21, 2020, more than a year later. In response, Brittig argued that the District's public records response log showed that his request was still considered open.

C. Ruling on Judicial Review

Regarding PRR 2020-018, the trial court noted that Fredrickson, Chief Volk, and Commissioner Heinrich had all declared that the minutes provided under each of Brittig's requests were identical and authorized a "home purchase spending cap" of $150,000, not a "project spending cap." CP at 844-45. The court also referenced the auditor's report submitted by Brittig

and its description of the District's view that the firefighter quarters project was a public works project, not a purchase. The court found that "there were different public records provided for the same meeting" and that the records "did not appear to be drafts." *Id.* at 845. The court found that "the District altered a public record and did not provide the original approved meeting minutes to [Brittig]." *Id.* at 846.

Regarding PRR 2019-011, the court found that October 3, 2019, when the District mailed the videos to Brittig, was the final date of the District's response. When Brittig emailed Myers in August 2020, he "was not asking for public records – he was asking for [a] stipulation to amend the complaint because he believed there were records silently withheld" and Brittig could have filed an amended complaint at that time, rather than requesting a stipulation. The court found that Myers was, therefore, not on notice that he was receiving a public records request. The court further found that there was no obstruction by the District preventing Brittig from filing an amended complaint, so equitable tolling did not apply. Accordingly, the court ruled that the statute of limitations had run, and Brittig's claim regarding PRR 2019-011 was time barred.

D. Reconsideration Proceedings

Both parties moved for reconsideration of the trial court's order. The District's motion highlighted Commissioner Heinrich's prior declaration regarding the process for approving meeting minutes, wherein Chief Volk typically sends drafts to the Board prior to the meeting and the commissioners have an opportunity to correct any errors. Commissioner Heinrich had previously declared that the April 16, 2018, meeting minutes were "approved pursuant to this procedure at the April 24, 2018 regular meeting of the Board," and that the minutes provided to

Brittig in response to PRR 2020-018 were identical to the approved minutes that were on file with the District. *Id.* at 352.

The District then pointed out that the initial draft of the April 16, 2018, minutes used the term "total project cap," and that Chief Volk emailed this draft to the commissioners and members of the Fire District on April 23, 2018, the day prior to the commission's meeting where the final minutes were approved. *Id.* at 876. Both Brittig and Cooper's husband were copied on the email and received the draft minutes using this language. But after Chief Volk sent the email, he received a call from one of the commissioners "to request that the 'total project cap' be changed to 'total home purchase cap.' " *Id.* at 886. Chief Volk then made that change and printed paper copies for the commissioners' review and vote at the April 24 meeting.

Both Commissioner Heinrich and Chief Volk declared that they "recognize[d] the document" attached to Cooper and Brittig's declarations as a copy of the draft minutes prior to this edit and subsequent approval. *Id.* at 883, 885. Chief Volk stated that this "explain[ed] where Mr. Brittig got the draft minutes that he now falsely claims were produced to him in response to PRR 2019-011 using the 'total project cap' language." *Id.* at 886-87.

The trial court granted Brittig's motion for reconsideration in part, ruling that the District had violated the PRA in responding to PRR 2019-011 and that Brittig's claim was not time barred. In explaining its ruling, the court relied on *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 80, 493 P.3d 1245 (2021), which discussed the fair notice test in the context of a plaintiff attaching PRA requests to a complaint. The court found that Myers was on notice that Brittig was requesting records that were silently withheld when Brittig sent his August 2020 email seeking agreement to amend the complaint, and that Brittig's claim filed in December 2020 was, therefore, timely.

The court denied the District's motion for reconsideration.

E. Penalties and Attorney Fees

The trial court issued a $94,300 penalty against the District. It arrived at this number by "multiplying the penalty of $50 by the tax base." *Id.* at 1884. In addition, the court awarded attorney fees to Brittig in the amount of $38,554.14.

F. Appeal

The District appeals the trial court's orders on judicial review, denying the District's motion for reconsideration, granting Brittig's motion for reconsideration, the penalty award against the District, and the order on attorney fees and costs. Brittig filed a cross appeal challenging the trial court's findings of fact and conclusions of law relating to the trial court's penalty assessment.

DISCUSSION

I. PUBLIC RECORDS ACT

"The PRA is a 'strongly worded mandate for broad disclosure of public records.' " *Green v. Pierce County*, 197 Wn.2d 841, 850, 487 P.3d 499 (2021) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)). Accordingly, "we must liberally construe the PRA in favor of disclosure." *West v. Port of Olympia*, 183 Wn. App. 306, 311, 333 P.3d 488 (2014); *see also* RCW 42.56.030.

Under the PRA, public agencies are required to produce all public records upon request unless an exemption applies. *Green*, 197 Wn.2d at 850; RCW 42.56.070(1). There is no official format required for a records request, and it is not necessary for a requester to specifically reference

the PRA. *O'Dea*, 19 Wn. App. 2d at 80. If an agency fails to properly respond to a request under the PRA, the requestor can bring an action against the agency. *See* RCW 42.56.550.

## II. STANDARD OF REVIEW

The parties both assert that, pursuant to RCW 42.56.550(3), judicial review under the PRA is de novo. The District further asserts that reviewing courts are not bound by a trial court's findings on disputed factual issues and can make their own factual findings, citing *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252-53, 884 P.2d 592 (1994) (*PAWS II*). In that case, our supreme court explained that "the appellate court stands in the same position as the trial court where the record consists only of affidavits, memoranda of law, and other documentary evidence." *PAWS II*, 125 Wn.2d at 252. This comes from the principle that

> "where the record both at trial and on appeal consists entirely of written and graphic material—documents, reports, maps, charts, official data and the like—and the trial court has not seen nor heard testimony requiring it to assess the credibility or competency of witnesses, and to weigh the evidence, nor reconcile conflicting evidence, then on appeal a court of review stands in the same position as the trial court in looking at the facts of the case and should review the record de novo."

*Id.* at 252 (quoting *Smith v. Skagit County*, 75 Wn.2d 715, 718, 453 P.2d 832 (1969)).

This case is unique in that, although the trial court did not hear live testimony, the declarations submitted by Brittig and those submitted by the District directly contradicted each other. By ruling in Brittig's favor on his claim regarding PRR 2020-018, the trial court necessarily had to assess the credibility of the declarants, weigh the evidence, reconcile conflicting evidence, and determine that the District's declarants were not being truthful. Under other circumstances where the trial court has made factual findings, we would review those findings for substantial evidence. *See State v. Kipp*, 179 Wn.2d 718, 727, 317 P.3d 1029 (2014).

Nevertheless, RCW 42.56.550(3) mandates de novo review, and we therefore agree with both parties that we need not defer to the trial court's findings of fact. Because the record consists only of affidavits and other documentary evidence, we are "not bound by the trial court's findings on disputed factual issues." *Cantu v. Yakima Sch. Dist. No. 7*, 23 Wn. App. 2d 57, 80, 514 P.3d 661 (2022). This allows us to decide factual issues from "the same position as the trial court" and enter our own factual findings. *Id.* at 89, 93-96.

### III. CLAIM REGARDING PRR 2020-018

The District argues that it did not violate the PRA in response to PRR 2020-018 by withholding the approved meeting minutes from the April 16, 2018, meeting because it produced evidence showing that it provided the correct copy of these minutes to Brittig in response to his request. The District further contends that the copy of the *approved* meeting minutes it provided to Brittig in response to PRR 2020-18 are the same as the approved meeting minutes it provided to Brittig in response to PRR 2019-011, and that Brittig obtained the document with the language "total project cap" in the email sent to him by Chief Volk on April 23, 2018. Br. of Appellant at 29.

Brittig argues that the District violated the PRA because it withheld the approved meeting minutes from the April 16, 2018, meeting in response to PRR 2020-018 and instead provided him with an altered record. He contends that the approved meeting minutes for the April 16, 2018 meeting are the document containing the words "total project cap," not the document containing the words "total home purchase cap." Br. of Resp't at 14. He bases this on the fact that the document he claims he received in PRR 2019-011 in response to his request for the April 16, 2018 meeting minutes differs from the one he received in response to the same request in PRR 2020-

018. And because both versions cannot be the correct version of the document, he argues that the District violated the PRA in responding to PRR 2020-018 because the District withheld what he believes to be the correct version of the approved meeting minutes.

A. THE DISTRICT DID NOT VIOLATE THE PRA

There is little agreement on the parties' versions of the facts. Brittig's claim relies on the assertion that the District altered the version of the minutes it sent him in response to PRR 2020-018. Meanwhile, Brittig's own materials in support of judicial review included an email from Chief Volk indicating that he received the *draft* meeting minutes, using the term "total project cap," for the April 16, 2018, meeting as early as April 23, 2018, to be reviewed for approval at a Board meeting the following day. CP at 779-80.

Brittig's evidence in support of his assertion that he received a version of the minutes that said "total project cap" in response to PRR 2019-011 comes from an attachment to the declaration by Cooper, who claims that the document is what Brittig received in response to his request. *Id.* at 268. But Cooper has no personal knowledge that this is true, relying instead on what she was told by Brittig. And Brittig's own supplemental declaration merely stated that the April 16, 2018 minutes provided in response to PRR 2019-011 "authorized a total project spending cap of $150,000" for the project, and that he "shared this information with fellow Union citizen Kim Cooper." CP at 776-77. Even assuming Brittig's assertion is true, his act of giving Cooper a copy of what he claimed he received in response to PRR 2019-011 and telling her what he believed it was does not meaningfully add to the evidence before us.

The District has consistently maintained that the April 16, 2018, meeting minutes it sent in response to PRR 2019-011 used the term "total home purchase cap" and that it sent Brittig the

same document in response to both requests. Moreover, the District has consistently maintained that the approved meeting minutes from the April 16, 2018, minutes use the language "total home purchase cap."

In its reconsideration materials, the District provided sworn declarations from Chief Volk and Commissioner Heinrich that they had reviewed the document attached to Cooper's declaration purporting to be the meeting minutes for April 16, 2018, that the District provided to Brittig in response to PRR 2019-011. Both Chief Volk and Commissioner Heinrich declared that they "recognize[d] the document . . . as a copy of the draft minutes . . . [that were] sent by email to the Board of Commissioners on April 23, 2018," which both Brittig and Cooper's husband received. *Id.* at 883. Chief Volk's declaration attached the email and included the attached meeting minutes.

The issue in this particular violation is which of these two documents (the one that uses the term "total project cap" or the one that uses the term "total home purchase cap") is the actual approved meeting minutes for the April 16, 2018, meeting. If we were to adopt Brittig's view and hold that the actual approved meeting minutes are the version that said "total project cap," then we would have to conclude that the actual meeting minutes were withheld in response to PRR 2020-018.[3]

---

[3] It is important to note that this is not simply a matter of the District having provided two different records in response to an identical request—which could mean, arguably, that the District violated the PRA in at least one of the two PRA requests simply by providing different records in response to identical requests. Brittig did not assert a violation of the PRA with respect to the District's response to PRR 2019-011 in the event that the trial court found that the approved meeting minutes were, in fact, the ones that used the term "total home purchase cap." Accordingly, even if Brittig is correct in his assertion that he was provided with different documents purporting to be the approved meeting minutes in response to PRR 2019-011 and PRR 2020-018, he has not shown a violation just by showing that there were two different documents provided.

Upon reviewing the evidence, we determine that the approved meeting minutes from the April 16, 2018, meeting were provided to Brittig in response to PRR 2020-018 and were not withheld. This conclusion is supported by the evidence showing that Brittig came into possession of the version of the meeting minutes using the term "total project cap" when he received the unapproved draft of the meeting minutes as an attachment to Chief Volk's April 23, 2018, email. In reaching this determination, we need not conclude that Brittig was untruthful in his assertions at the trial court; it is possible that he was handling so many documents in response to his public records requests and in preparation for litigation of his other claims that this document got mixed into his other documents and created confusion on his part. But it was error for the trial court to find that the document proffered by Brittig was the actual approved April 16, 2018, meeting minutes (using the term "total project cap") as opposed to what the District proffered (using the term "total home purchase cap").

The evidence proffered by Brittig that he contends supports the opposite conclusion includes (1) an unauthenticated document that Brittig claims was a report from the State Auditor, (2) Cooper's declaration, which relies on hearsay by Brittig and is not based on personal knowledge; and (3) videos that Brittig submitted with his materials to the trial court. The first two documents are not admissible (*see* ER 602, 901), and our commissioner denied Brittig's motion to submit copies of the videos at issue because there was no record that the videos were formally made a part of the record below. But even if the videos were part of our record on review, the question before us is not whether the approved meeting minutes for the April 16, 2018, meeting *accurately reflect what was said at the meeting*. Rather, the question before us is whether the

approved meeting minutes were provided to Brittig in response to his request. We conclude that they were.

The explanation provided by the District makes sense because it is common practice to send out a draft of the meeting minutes for review by those who will be voting on whether to adopt the minutes, and equally common for someone to identify a drafting error in the proposed minutes and ask that they be changed.[4] The fact that Brittig was a recipient of the draft meeting minutes sent out on April 23, 2018, provides the most logical explanation of how he came to be in possession of minutes purporting to say that the total "project" cap was $150,000.

Accordingly, we reverse the trial court's order on judicial review and order denying the District's motion for reconsideration finding that the District violated the PRA in response to PRR 2020-018.

B. EVEN UNDER SUBSTANTIAL EVIDENCE REVIEW, THE DISTRICT DID NOT VIOLATE THE PRA

Even if we applied a substantial evidence review to the trial court's factual findings,[5] substantial evidence does not support the trial court's finding that the approved meeting minutes from the meeting on April 16, 2018, are the minutes containing the term "total project cap," and that the District violated the PRA by withholding the actual approved meeting minutes. CP at 846.

As described above, the evidence provided by Brittig in support of his claim was largely not admissible or did not bear on the issue of whether the approved April 16, 2018, meeting minutes were produced by the District in response to PRR 2020-018. Accordingly, it was error for the trial court to find that the document proffered by Brittig was the actual approved April 16, 2018

---

[4] The declarations by Commissioner Heinrich and Chief Volk confirmed that this was common practice for the District.

[5] *See Kipp*, 179 Wn.2d at 727.

meeting minutes (using the term "total project cap") as opposed to what the District proffered (using the term "total home purchase cap"). Therefore, under substantial evidence review, we would reach the same conclusion and reverse the trial court's order on judicial review and order denying the District's motion for reconsideration.

## IV. CLAIM REGARDING PRR 2019-011

The District argues that Brittig's claim concerning the adequacy of the District's search in response to PRR 2019-011 is barred by the statute of limitations because Brittig filed his second amended complaint more than one year after the District provided him with videos responsive to his request. Brittig argues that his August 24, 2020 email to Myers stating that he believed the District silently withheld records responsive to PRR 2019-011 put the District on fair notice that it needed to produce additional records responsive to Brittig's request and, therefore, his claim was timely under *O'Dea*. We hold that Brittig's claim is time barred.

A. LEGAL PRINCIPLES

RCW 42.56.550(6) provides that "[a]ctions under [the PRA] must be filed within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis." "Our Supreme Court has held that this section reveals the legislature's intent to impose a one year statute of limitations 'beginning on an agency's final, definitive response to a public records request.' " *Dotson v. Pierce County.*, 13 Wn. App. 2d 455, 470, 464 P.3d 563 (2020) (quoting *Belenski v. Jefferson County*, 186 Wn.2d 452, 460, 378 P.3d 176 (2016)).

In *O'Dea*, the city's public records officer did not receive two letters from O'Dea requesting public records, which O'Dea later attached to his complaint alleging PRA violations by the city. 19 Wn. App. 2d at 73-74. The city did not respond to the requests attached to the complaint

immediately after receiving them, but eventually provided responsive documents during the litigation. *Id.* at 74-75. The trial court ruled that the letters attached to O'Dea's complaint were valid PRA requests and that the city violated the PRA when it failed to respond to the requests when it received the complaint. *Id.* at 75. On appeal, the city argued that it never received the letters in a context where they were recognizable as PRA requests. *Id.* at 80. We affirmed the trial court's ruling that the city violated the PRA. *Id.* at 80-83. After going through the characteristics[6] of the requests and the requested records, we reasoned that the city was on fair notice that it received requests for public records. *Id.* at 80-83.

B. ANALYSIS

Brittig's August 24, 2020 email to Myers stated that Brittig believed the District had silently withheld records related to PRR 2019-011, after the District had already provided multiple installments of records, during litigation regarding Brittig's other requests. Therefore, as an initial matter, this email was not itself a PRA request, but rather a follow-up to a request that, from the District's perspective, it had already fulfilled. As noted by the trial court in its initial ruling on this issue, at that time, Brittig could have sought leave to amend his complaint, but he did not do so for another two months.

---

[6]    The factors relating to the characteristics of the request are (1) its language, (2) its format, and (3) the recipient of the request. The factors relating to the characteristics of the records are "(1) whether the request was for specific records, as opposed to information about or contained in the records," "(2) whether the requested records were actual public records," and "(3) whether it was reasonable for the agency to believe that the requester was requesting the documents under an independent, non-PRA authority."

*O'Dea*, 19 Wn. App. 2d at 81 (internal citations omitted) (quoting *Germeau v. Mason County*, 166 Wn. App. 789, 807, 271 P.3d 932 (2012)).

We disagree with Brittig's position that his email put the District on fair notice that it needed to supplement its response to PRR 2019-011. The parties were in active litigation at the time of the email, and Brittig's email was requesting a stipulation to amend his complaint to add his claim regarding PRR 2019-011. Although it may have been prudent for the District to treat Brittig's email as a clarification of his request, the email was to notify Myers that Brittig intended to add a cause of action to his complaint. This is not analogous to the circumstances in *O'Dea*, where the agency was receiving the PRA requests for the first time when it received the complaint. 19 Wn. App. 2d at 73-74.

After Brittig emailed Chief Volk requesting videos responsive to PRR 2019-011, the District mailed videos to Brittig on October 3, 2019 and did not subsequently produce any further documents under the request. Brittig did not move for leave to amend his complaint until October 27, 2020, and did not file his second amended complaint until December 21, 2020. This was more than one year after the District's last production of a record and, therefore, Brittig's claim is barred by the one-year statute of limitations. *See* RCW 4.56.550(6). Accordingly, we reverse the trial court's order granting in part Brittig's motion for reconsideration.

## V. PENALTIES

In light of our holding that the District did not violate the PRA as to PRR 2020-018, and that Brittig's claim as to PRR 2019-011 was untimely, the trial court's penalty award should be vacated.[7]

---

[7] We note that in the event that we affirmed one or both of the PRA violations found by the trial court, both parties agreed that the trial court used an improper method for the calculation of the penalty and that remand for recalculation would have been required.

VI. ATTORNEY FEES AT TRIAL COURT

The District asks us to vacate the trial court's award of attorney fees to Brittig because it did not violate the PRA. RCW 42.56.550(4) provides that a person prevailing in a PRA action against an agency shall be awarded all costs and reasonable attorney fees incurred in connection with the action. Because we hold that the District did not violate the PRA as to PRR 2020-018, and that Brittig's claim as to PRR 2019-011 was untimely, we agree with the District. Accordingly, the trial court's attorney fee award is vacated.

ATTORNEY FEES ON APPEAL

Brittig requests attorney fees on appeal pursuant to RAP 18.1 and RCW 42.56.550(4). As noted above, RCW 42.56.550(4) provides for attorney fees to a person prevailing in a PRA action against an agency. Because Brittig is not the prevailing party, he is not entitled to attorney fees.

CONCLUSION

The District did not violate the PRA in its response to Brittig's PRR 2020-018 PRA request, and Brittig's claim as to PRR 2019-011 is barred by the one-year statute of limitations. Accordingly, we reverse the trial court's orders on judicial review and on reconsideration. Based on our conclusion that the District did not violate the PRA, both the penalty against the District and the attorney fee award to Brittig are vacated. We reverse and remand for further proceedings consistent with this opinion.

No. 57408-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, J.

GLASGOW, C.J.